UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.

Francisco Javier Sanchez-Gonzalez,

    Defendant.

Case No. 22-cr-143 (KMM/DTS)

**REPORT AND RECOMMENDATION**

## INTRODUCTION

Defendant Francisco Sanchez-Gonzalez moves to suppress evidence derived from a GPS tracker attached to his car. Def. Mot. to Suppress. Evidence; Dkt. No 22; Def. Mem. in Support (Def. Mem.); Dkt. No. 39. He argues that while law enforcement eventually obtained a warrant to attach the GPS tracker to his car, they attached it before obtaining that warrant amounting to an unlawful search. Def. Mem.; Dkt. No. 39. According to Sanchez-Gonzalez, tracking the car using the GPS device was unlawful and all evidence obtained from that tracking, including Sanchez-Gonzalez's later arrest, is tainted as fruit of the poisonous tree and must be suppressed. *Id.* While law enforcement's attaching the GPS tracker without a warrant was an unlawful search under the Fourth Amendment, the independent source doctrine precludes suppression of the resulting evidence, and the Court recommends Sanchez-Gonzalez's motion [Dkt. No. 22] be denied.

**FINDINGS OF FACT**

**I.   Surveillance, Search, and Arrest**

In December 2021, undercover law enforcement (UC) communicated with a suspected drug trafficker, setting up a controlled buy of methamphetamine. Tr. of Mot. Hrg. at 6:13-7:20; Dkt. No. 34. On December 10, 2021, an unidentified man, Man A, approached the UC in their car to complete the drug transaction. *Id.* at 8. Law enforcement confirmed the substance purchased was narcotics. Warrant at 2; Dkt. No. 41-1. Five minutes after completing the transaction and exiting the UC's car, Man A got into the front passenger's seat of a silver Chevrolet Malibu driven by another unidentified man, Man B, who was later identified as the Defendant Sanchez-Gonzalez. *Id.* at 13:18-15:5. Law enforcement surveilling the transaction followed the Malibu to the Mall of America. *Id.* at 15:10-22. After parking in the Mall of America parking ramp, a third unidentified man, Man C, got into the Malibu's backseat. *Id.* at 16:24-17:1; 34:13-15. After a few minutes, Man C exited the vehicle with a bag and placed the bag in the trunk of a nearby Ford Fusion. *Id.* at 17:6-12. Man C got back into the Malibu where the three men remained for a few minutes before walking into the mall together. *Id.* at 17:13-22. The three men went to a restaurant in the mall and stayed for about two hours before leaving the mall together. *Id.* at 20:20-21:3. Using the mall's surveillance system, law enforcement obtained photos of the three men. *Id.* at 24:9-13.

Because of an ongoing winter storm, law enforcement ceased tracking the men in person on the evening of the 10th and instead attached GPS trackers to the Malibu and the Fusion.[1] *Id.* at 21:14-25; 36:12-14. Law enforcement applied for and obtained a

---

[1] The Fusion tracker is not the subject of this motion.

warrant for the Malibu GPS tracker the following day (December 11, 2021)[2], activating it on December 13, 2021, to determine the Malibu's location. *Id.* at 36:23-37:2; Warrant at 3; Dkt. No. 41-4. The warrant application explicitly explained these details, including that law enforcement had ceased in-person surveillance on the 10th because of the snowstorm, and that they had installed the GPS trackers prior to the application for the warrant. Warrant at 3; Dkt. No. 41-1. Law enforcement checked the Malibu's location on the 13th and again mid-morning on December 15, 2021, *id.* at 37:1-25, 38:5-18, locating it in the parking lot of a Best Western hotel. *Id.* at 22:22-23:1. Law enforcement went to that hotel and saw Man B—Sanchez-Gonzalez—get into the Malibu and leave the parking lot. He was then pulled over by Fridley Police. *Id.* at 24:22-25:11. After arresting Man B, identified upon his arrest as Sanchez-Gonzalez, *id.* at 34:18, police searched the Malibu and found narcotics in the trunk. *Id.* at 25:11-16.

## II. This Motion

Sanchez-Gonzalez put forth three challenges relating to his arrest, the search of his person, and the search of the Malibu. First, he contended the Fridley Police lacked probable cause to stop him after leaving the Best Western on December 15. Second, he argued that the subsequent search of his person and the Malibu was unlawful for lacking a warrant and probable cause. And lastly, he argued that even if his stop was legal, it was unlawfully extended. Motion to Suppress Evidence Obtained as a Result of Search and Seizure at 1-2; Dkt. No. 22. In post-hearing briefing on the motion, Sanchez-Gonzalez rested on different bases for suppression of evidence. At bottom, he

---

[2] "Q. [Defendant's Counsel]: Okay. So you applied for a tracker warrant on December 11th. The day after you put the tracker on the Malibu, correct?
A. [Law enforcement special agent]: Correct." Tr. of Mot. Hrg. at 36:12-15; Dkt. No. 34.

argues that the GPS tracker's placement before law enforcement obtained a warrant constituted an unlawful search and that all resulting evidence should be suppressed as fruit of the poisonous tree. Defendant's Mem. of Law in Support of Mot. to Suppress Ev. Obtained as a Result of Search and Seizure (Def. Mem.) at 6-8; Dkt. No. 39. The fruit, he argues, included his arrest, as well as the search of his person and the Malibu, because law enforcement would not have known his whereabouts but for installing the GPS tracker on December 10. *Id.* at 8, 12. Furthermore, Sanchez-Gonzalez contends law enforcement lacked probable cause to arrest him in the first instance. *Id.* at 8-12.

In responsive briefing, the Government essentially ignored Sanchez-Gonzalez's argument about the GPS tracker, claiming he had waived the argument because he had "not moved to suppress evidence based upon the purportedly illegal placement of the tracker on the vehicle or on the accessing of tracker data in his motion" at Docket No. 22. Government Response to Defendant's Mem. of Law in Support of Mot. to Suppress Evid. Obtained as a Result of Search and Seizure (Gov. Mem.) at 3, n.1; Dkt. No. 41. Instead, the Government's brief only argued that Sanchez-Gonzalez's arrest was supported by probable cause. *Id., passim*. The Court ordered additional briefing on the GPS tracker issues, including waiver of the argument.

## CONCLUSIONS OF LAW

### I. GPS Tracker

#### A. Waiver

The Federal Rules of Criminal Procedure provide that a party must move for suppression of evidence before trial, "if the basis of the motion is then reasonably available." Fed. R. Crim. P. 12(b)(3); 12(b)(3)(C). Failure to move pretrial, or failure to

4

include a particular argument in a pretrial motion, may result in waiver. *United States v. Spotted Elk*, 548 F.3d 641, 656 (8th Cir. 2008).

The Government contends Sanchez-Gonzalez waived any argument regarding the validity of the GPS tracker's installation by failing to raise the issue in his Motion to Suppress [Dkt. No. 22]. Gov. Mem. at 3, n. 1; Dkt. No. 41; Government's Additional Briefing in Response to Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Gov. Supp. Mem.) at 3-4; Dkt. No. 44. Sanchez-Gonzalez argues he raised the issue as soon as he learned of it, including it in his post-hearing briefing on the suppression motion. Because this argument was based on testimony elicited at the suppression motion hearing, Sanchez-Gonzalez's briefing the issue was timely, he argues. Defendant's Additional Briefing in Support of Mot. to Suppress (Def. Supp. Mem.) at 2-3; Dkt. No. 48.

The Court agrees with Sanchez-Gonzalez. While the Federal Rules establish waiver under certain circumstances, Courts are granted considerable discretion in handling pretrial motions. For example, courts may extend or reset motions deadlines "at any time before trial." Fed. R. Crim. P. 12(c)(2). And even where a motion is untimely, "a court may consider the defense, objection, or request if the party shows good cause." *Id.* at (3). Here, Sanchez-Gonzalez diligently and timely moved to suppress based on the information he had. *See* Dkt. No. 22. The parties each had an opportunity to develop testimony relating to his motion at an evidentiary hearing, *see* Dkt. No. 31, and it was only through that testimony that Sanchez-Gonzalez learned of

5

additional bases to move to suppress. Def. Supp. Mem. at 2; Dkt. No. 48.[3] He then promptly raised additional argument and the parties were granted still another opportunity to brief the suppression issues. Dkt. Nos. 39, 46.

Furthermore, disallowing Sanchez-Gonzalez's arguments about the GPS tracker—argument based on evidence elicited at the suppression hearing—belies the purpose of an evidentiary hearing to begin with. If a defendant has the opportunity to develop testimony and evidence at such a hearing, but then no opportunity to use that new evidence in his argument, the hearing itself loses its value and efficacy. In a case such as this, where the defendant has diligently followed procedure and the parties have each had ample opportunity to develop the record and argue the issues, a finding of waiver would serve no discernible purpose. Sanchez-Gonzalez's argument as the GPS tracker was not waived.[4]

---

[3] The Government implies that because Sanchez-Gonzalez knew of the GPS tracker itself prior to the motions hearing, that he should have made his argument in his initial motion and failing to do so, the argument was waived. Gov. Supp. Mem. at 4; Dkt. No. 44. But that contention ignores the fact that Sanchez-Gonzalez did not know about the *timing* of the GPS tracker's installation until the motions hearing. It is the timing of the installation, rather than the installation or existence of the tracker alone, that forms the basis for Sanchez-Gonzalez's motion, and the Government's contention misses that point. Furthermore, while the timing of the tracker placement was evident on the face of the warrant itself, there is nothing in the record to suggest that the Defendant had a copy of the warrant prior to filing his motion, and the Government has not alleged otherwise either.

[4] Given that Sanchez-Gonzalez has not briefed many of the issues on which he initially based his motion to suppress, the Court finds them to have been waived and declines to address them further here. *See United States v. Spotted Elk*, 548 F.3d 641, 656 (8th Cir. 2008) ("The district court could hardly be faulted for failing to grant the suppression motion on the basis of facts not presented to it."); *United States v. Barajas-Chavez*, 358 F.3d 1263, 1266-67 (10th Cir. 2004) ("The memoranda in support of his motions, each a little over one page in length, add no facts supporting his claim."); *Cf. United States v. Green*, 691 F.3d 960, 963 (8th Cir. 2012) (analyzing Rule 12(b)(3)).

### B. Installation of GPS Tracker Constituted a Search

The Fourth Amendment prohibits "unreasonable searches and seizures," and provides that law enforcement may only obtain a warrant "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. A warrantless search is presumptively unreasonable. *Michigan v. Fisher*, 558 U.S. 45, 47 (2009). The Fourth Amendment is animated by both property interests and privacy interests, as it protects "persons, houses, papers and effects," U.S. Const., amend. IV, as well as a person's "reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 351 (1967); *see also United States v. Jones*, 565 U.S. 400, 407-409 (2012) (explaining that *Katz* did not displace all Fourth Amendment law based on property interests). Where the government "physically occupie[s] property for the purpose of obtaining information," that physical intrusion amounts to a search under the Fourth Amendment. *Jones*, 565 U.S. at 404.

In *Jones*, law enforcement applied for and received a warrant to install a GPS tracking device to the underside of Jones's car. The warrant was valid for ten days, but police failed to install the tracker until the eleventh day. Over the next twenty-eight days, law enforcement tracked Jones using the GPS tracker and, using information from that tracking and other investigation, indicted Jones for conspiracy to distribute and possess with intent to distribute cocaine. *Id.* at 402-403. Jones moved to suppress the evidence obtained from the GPS device, arguing law enforcement lacked a warrant to install it, the original warrant having already expired at the time the device was installed. *Id.* The Court held that because a car is an "effect" for Fourth Amendment purposes, the

Government's warrantless installation of the GPS tracker on Jones's car to obtain information constituted was an unlawful search. *Id.* at 404.

Here, the Government installed a GPS device without a warrant, just as it did in *Jones*. While the *Jones* tracker was installed after a tracking warrant had expired, the device thus being installed "too late," in Sanchez-Gonzalez's case the warrant was installed too early—before law enforcement obtained a warrant at all. *See id.*, at 403. Whether too early or too late, the warrantless attaching of a GPS tracker to a personal effect with the purpose of obtaining information is an unlawful search under the Fourth Amendment. *Id.* Thus, the installation of the tracker on the Malibu was unlawful.

### C. Independent Source Doctrine Precludes Suppression

Even where a search violated the Fourth Amendment, as the installation of the GPS tracker did here, suppression of the evidence borne of that search may not be justified. The exclusionary rule is a "last resort" and does not "apply in every circumstance in which it might provide marginal deterrence" to unlawful police conduct. *Herring v. United States*, 555 U.S. 135, 140 (2009). Several exceptions to the exclusionary rule apply, including the independent source doctrine. *Utah v. Strieff*, 573 U.S. 232, 238 (2016). In general, these exceptions reflect Courts' need to weigh the benefits of deterring improper police conduct against the social costs of applying the exclusionary rule, namely the chance of "letting guilty and possibly dangerous defendants go free." *Herring.* at 141 (quoting *United States v. Leon* 468 U.S. 897, 908 (1984).

The independent source doctrine provides that evidence obtained from an unlawful search need not be suppressed "if officers independently acquired it from a

separate, independent source." *Strieff*, 579 U.S. at 238 (citing *Murray v. United States*, 487 U.S. 533, 537 (1988). Undergirding this exception to the exclusionary rule is the principle that the police should be placed "in the same, not *worse*, position that they would have been in if no police error or misconduct had occurred." *Murray*, 487 U.S. 537 (citing *Nix v. Williams*, 467 U.S. 431, 443 (1984)). Because suppressing independently-sourced information would put the police in a worse position than they would have been without the Fourth Amendment violation, suppression in that circumstance is inappropriate. *Id.*

In a case such as this one where an unlawful search is followed by a search pursuant to a warrant, Courts make two inquiries to determine whether the warrant constitutes an independent source, precluding suppression. (1) Was the decision to seek a warrant prompted by what was learned through the unlawful search?; and (2) Did information obtained through the unlawful search affect the Magistrate's decision to issue the warrant? *Id.* at 542. Put differently, where police would have applied for the warrant had they not acquired the tainted information and where the warrant application affidavits supported probable cause even without inclusion of the tainted information, the warrant is considered an independent source and the exclusionary rule does not apply. *United States v. Swope*, 542 F.3d 609, 614 (8th Cir. 2008).

This analysis necessarily requires consideration of whether the GPS tracker warrant was supported by probable cause, absent any tainted information obtained through the unlawful search. Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances." *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016). To be valid, a warrant must set

9

forth "sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The totality-of-the-circumstances test for reviewing a probable cause determination means that such inquiries are "not readily, or even usefully, reduced to a neat set of legal rules." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). While judges issuing search warrants may "draw reasonable inferences from the totality of the circumstances," *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (quoting *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009)), a warrant issued based only on a supporting affidavit that merely asserts conclusions rather than facts may be invalid. *Aguilar v. Texas*, 378 U.S. 108, 113 (1964) (internal citations omitted).

Reviewing courts must afford "great deference" to the probable cause determination of the judge who issued the warrant and should resolve even "doubtful or marginal cases" in favor of a warrant's validity. *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (citation omitted); *see United States v. Ventresca*, 380 U.S. 102, 109 (1965). So long as the issuing judge had a "substantial basis" for concluding the "search would uncover evidence of wrongdoing," this Court must uphold the probable cause determination. *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999).

The GPS tracker warrant was supported by probable cause. The affidavit explained the months-long investigation into a known drug-trafficking organization, including introduction of a UC into that organization. Warrant at 2; Dkt. No. 41-4. It explained the details of the controlled buy, referenced above, including the timeline of events, appearance of the Malibu, and surveillance of the three men through their visit

10

to the Mall of America. The affidavit also explained that the drug runner with whom the UC had interacted entered the Malibu shortly after the controlled buy. After arriving at the mall, they were joined by a third person, whom the affidavit identified by name. *Id.* at 2-3. Reading the entirety of the warrant together, there was probable cause to believe the GPS tracker would uncover evidence of a crime.

Furthermore, this later warrant was an independent source, and the Court thus recommends Sanchez-Gonzalez's Motion to Suppress be denied. First, it is clear from the record that the police would have applied for the GPS tracker warrant even without the unlawful conduct. In fact, while the installation of the tracker constituted a search for purposes of the Fourth Amendment, that search itself does not appear to have uncovered any information whatsoever. Tr. of Mot. Hrg. at 36:22-37:25; Dkt. No. 34. Instead, the officers merely attached the tracker, confirmed it was in working order, then turned it off. Warrant at 2; Dkt. No. 41-1. They did not begin tracking the Malibu until after the warrant issued, and thus there was no information from the GPS tracker to include in the warrant application. Second, because there was no information obtained from the unlawful search, there was no tainted information in the later warrant application. And, as noted above, the warrant application was supported by probable cause. Because the warrant was a valid independent source of the evidence Sanchez-Gonzalez seeks to suppress, the Court recommends his motion be denied.

## II.    Arrest

Sanchez-Gonzalez also challenges his arrest on two grounds. First, he argues it was the fruit of the poisonous tree, tainted by the unlawful GPS installation. That argument is precluded by the analysis above, concluding that the warrant was an

CASE 0:22-cr-00143-KMM-DTS   Doc. 50   Filed 05/01/23   Page 12 of 14

independent source of evidence, which includes Sanchez-Gonzalez's later arrest. Def. Mem. at 8; Dkt. No. 39. Second, he argues the police lacked probable cause to arrest him in the first instance.

Probable cause to arrest "exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the believe that an offense has been or is being committed." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)). Probable cause to arrest depends on the totality of the circumstances. *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). This determination thus includes consideration of evidence both supporting and negating probable cause. *Id.* Even an arrest executed without a warrant is valid so long as it is supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003).

Law enforcement had probable cause to arrest Sanchez-Gonzalez and the Court recommends his motion be denied. First, Sanchez-Gonzalez picked up Man A within just a few minutes of the controlled buy of narcotics. He then transported Man A to the Mall of America, where law enforcement witnessed a transfer of a bag from one car (the Malibu Sanchez-Gonzalez was driving) to another (the Fusion). While Sanchez-Gonzalez argues these events were innocuous, describing them as "giv[ing] an acquaintance a lift to a mall" and "a third person [carrying] a bag of unknown contents from one car to the next," they could just as easily indicate illegal activity. Def. Mem. at 10; Dkt. No. 39. Law enforcement knew Man A had possessed and sold methamphetamine shortly before entering Sanchez-Gonzalez's car. Warrant at 2; Dkt.

12

No. 41-1. Furthermore, law enforcement confirmed the drug trafficking organization at issue in the wider investigation does not use unwitting individuals in its trafficking operation. Tr. of Mot. Hrg. at 19:24-20:9. Those two things alone suggest Sanchez-Gonzalez played some role, however small, in trafficking drugs to the UC. Moreover, a reasonable person viewing all the events and circumstances together could reasonably infer the later transfer of a bag from the Malibu to the Fusion was related to the trafficking activity, further implicating Sanchez-Gonzalez as driver of the Malibu.

Sanchez-Gonzalez argues his "mere propiniquity" with Man A and Man C is not enough to justify his arrest. Def. Mem. at 10; Dkt. No. 39. He relies on *Ybarra v. Illinois*, 444 U.S. 85 (1979), claiming law enforcement's suspicion about his conduct was not particularized, and instead was based on his "bare association" with the other men. Def. Mem. at 10; Dkt. No. 39. But *Ybarra* is distinguishable on the facts. There, a warrant authorized police officers to search a bar and its bartender for evidence of drug possession. *Id.* at 88. After entering the bar, the officers told every person present that they were going to search for weapons and then patted down nine of the thirteen bar patrons including Ybarra. *Id.* After feeling "a cigarette pack with objects in it" during Ybarra's patdown, officers fully searched him and recovered tinfoil packets containing heroin. *Id.* at 89. The Supreme Court suppressed that evidence, explaining that

> There is no reason to suppose that, when the search warrant was issued . . . the authorities had probable cause to believe that any person found on the premises of the [bar], aside from the [bartender] would be violating the law. The search warrant complaint did not allege that the bar was frequented by persons illegally purchasing drugs. It did not state that the informant had ever seen a patron of the tavern purchase drugs from [the bartender] or from any other person. Nowhere, in fact, did the complaint even mention the patrons of [the bar]."

*Id.* at 90.

Sanchez-Gonzalez was not merely at a bar where a suspected criminal happened to work. Instead, he picked up a drug runner shortly after that drug runner sold methamphetamine to a UC. And a third man whom police also suspected of trafficking activity transferred something from Sanchez-Gonzalez's car to another car. Moreover, Sanchez-Gonzalez then socialized with these two people for several hours. While there was no indication Ybarra knew the bartender or was involved in the criminal conduct suspected in that case, there was ample indication that Sanchez-Gonzalez knew these other men and was likely at least a pawn in the trafficking activity. For similar reasons, Sanchez-Gonzalez's argument that no inference of common enterprise is appropriate also fails.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT: Sanchez-Gonzalez's Motion to Suppress [Dkt. No. 22] be **DENIED**.

Dated: May 1, 2023                               s/David T. Schultz
                                                 DAVID T. SCHULTZ
                                                 United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).