**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America | Case No. 22-cr-143 (KMM/DTS) |
| Plaintiff, | |
| v. | |
| Francisco Javier Sanchez-Gonzalez, | **ORDER ON DEFENDANT'S MOTION TO SUPPRESS** |
| Defendant. | |

Before the Court is Defendant Francisco Javier Sanchez-Gonzalez's Objection to the Report and Recommendation ("R&R") of Magistrate Judge David T. Shultz, dated May 1, 2023. [Dkt. Nos. 50, 53.] Judge Shultz recommends that Mr. Sanchez-Gonzalez's Motion to Suppress be denied. Following the Court's request, the parties submitted additional briefing and subsequently appeared for argument before the Court on July 11, 2023. [Order, Dkt. 58].

After an R&R is issued, a party may "file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *United States v. Miller*, Crim. No. 20-232(19) (JRT/BRT), 2022 WL 3644894, at *2 (D. Minn. Aug. 24, 2022) (quoting *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008)). The Court reviews de novo those portions of the R&R to which specific objections are made, and it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b)(3).

1

For the reasons discussed below, the Court **OVERRULES** Mr. Sanchez-Gonzalez's objections; **ACCEPTS** the R&R to the extent that it is consistent with the analysis below; and **DENIES** Mr. Sanchez-Gonzalez's Motion to Suppress.

## I.   BACKGROUND

### A.  Factual History

During December 2021, law enforcement was investigating a drug trafficking organization in the Twin Cities. Undercover officers communicated with a suspected drug trafficker to set up a controlled buy of methamphetamine. [Tr. 6-7; Dkt. No. 34]. An unidentified man approached the officers at a preset location to complete the drug transaction. [*Id.* at 8.] Law enforcement confirmed that the substance purchased from the unidentified man was narcotics. [Warrant App'l at 2; Dkt. 41-1.] Within five minutes of the deal, a Chevy Malibu arrived driven by another unidentified man, later identified as Mr. Sanchez-Gonzalez. [Tr. 13-15.] The man who had just sold the drugs to the undercover agents entered the Chevy Malibu and sat in the passenger seat. [Tr. 14.] Law enforcement followed the Malibu to a parking ramp in the Mall of America. [Tr. 15.] After parking the vehicle, law enforcement observed a third unidentified man get into the Malibu's backseat for several minutes and then exit the vehicle carrying a bag that he placed in the trunk of a nearby Ford Fusion. [Tr. 16-17, 34.] That man then got back into the Malibu with Mr. Sanchez-Gonzalez and the other man for several minutes, before they all went into the mall together. [Tr. 17.] The men had dinner at a restaurant in the mall for about two hours before leaving together. [Tr. 20-21.]

Although officers believed that both the Malibu and its driver were involved in drug trafficking, law enforcement decided not to follow the men in person that night due to an

approaching winter storm. Instead, they attached a GPS tracker to the bumper of the Chevy Malibu.[1] [Tr. 21, 36]. The agents testified that they turned on the GPS tracker to ensure that it was working, but then turned it off and otherwise did not use it until receiving a warrant. [Warrant App'l at 3, Dkt. 41-1; Tr. 36.]

The next day, on December 11, 2021, law enforcement applied for a warrant to authorize use of the tracker on the Malibu. [Tr. 36.] The warrant application detailed law enforcement's observations of the drug transaction on December 10 and the surveillance at the Mall, as well as additional information about their ongoing investigation of the drug trafficking organization that the three men were believed to be associated with. The warrant was issued by a state court judge on December 11, 2021.

Officers used the tracker to check the Malibu's location on December 13, 2021 and December 15, 2021, eventually finding the Malibu at a hotel. [Tr. 22-23.] Law enforcement then drove to the hotel, where they observed Mr. Sanchez-Gonzalez get into the Malibu and leave the parking lot. Shortly thereafter, police stopped the car. [Tr. 24-25]. After identifying the driver as Mr. Sanchez-Gonzalez, police searched the vehicle and found narcotics in the trunk. [Tr. 25]. Mr. Sanchez-Gonzalez was charged with Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

### B. Procedural History

Mr. Sanchez-Gonzalez filed a Motion to Suppress on November 9, 2022 alleging that his arrest was unlawful and that the placement and use of the GPS tracker violated his Fourth

---

[1] The officers also put a tracker on the Ford Fusion, but that tracker is not at issue in this motion.

Amendment rights as set forth in *United States v. Jones*, 565 U.S. 400 (2012). [*See* Dkt. Nos. 22, 39.] The R&R concluded that the placement of the tracker without a warrant was an unlawful search but that suppression was precluded by the independent source doctrine. [R&R at 1, 7–8; Dkt. No. 50.]

A warrant is considered an "independent source" if (1) the police would have applied for the warrant if they had not acquired the tainted information; and (2) there is probable cause to support the warrant after the tainted information has been removed. *United States v. Swope*, 542 F.3d 609, 614 (8th Cir. 2008). The R&R determined that the police would have applied for the warrant based on their observations of Mr. Sanchez-Gonzalez following the controlled drug buy. [R&R 11]. Judge Schultz also concluded that the officer's prior observations of Mr. Sanchez-Gonzalez's involvement with the drug transaction provided probable cause to support the warrant. [*Id.*] And because law enforcement did not obtain any information from the tracker until after the warrant was issued, the R&R concluded that there was not any tainted information in the application. Finally, the R&R found that Mr. Sanchez-Gonzalez's arrest was supported by probable cause for the same reasons detailed in the warrant. [*Id.* at 12–13].

Mr. Sanchez-Gonzalez objected to the R&R. [Objection, Dkt. No. 53.] His primary objection is that the independent source doctrine does not apply because his location on the date of the arrest could not have been obtained without the warrantless placement of the tracker. To Mr. Sanchez-Gonzalez, it was not "later obtained independently from activities untainted by the initial illegality." [*Id.* at 8, 9.] Essentially, he argues that the officers would have been unable to place the tracker on his car after receiving the warrant because they did not know where to find the vehicle. Mr. Sanchez-Gonzalez also challenges whether the

4

officers had probable cause to arrest him, contending that law enforcement's sole basis to arrest him was his "mere association" with the drug runner who was involved with the controlled drug deal. [*Id.* at 11–12 (citing *Sibron v. New York*, 392 U.S. 40, 45 (1968))]. Mr. Sanchez-Gonzalez also relies on *United States v. Lopez-Zuniga*, 909 F. 3d 906, 909–10 (8th Cir. 2018), where the Court affirmed the suppression of GPS tracker information because the search warrant was not supported by probable cause and the good-faith exception to the rule did not apply.

In response, the government reiterated its arguments that the evidence obtained from the tracker should not be suppressed because the warrant for the tracker constituted an independent source for the information. The government also argued that exigent circumstances justified the warrantless placement, and it invoked the good faith exception to preclude suppression. [Dkt. No. 56.]

After reviewing the record and the parties' briefing, this Court requested supplemental briefing addressing (1) whether Mr. Sanchez-Gonzalez has standing to raise a trespass-based Fourth Amendment claim under *United States v. Jones*, 565 U.S. 400 (2012); (2) the interplay, if any, between the trespass theory of the Fourth Amendment, as articulated in *Jones*, and exceptions to the warrant requirement initially devised under the reasonable-expectation-of-privacy doctrine, such as the automobile exception; and (3) whether the inevitable discovery doctrine is more applicable to the facts of the case than the independent source doctrine. [Order, Dkt. No. 58.]

In his supplemental brief, Mr. Sanchez-Gonzalez argued that he has standing because he "exclusively operated" the vehicle on the date the tracker was installed and at the time of

his arrest. [Def. Suppl. Br. 4, Dkt No. 59.] Mr. Sanchez-Gonzalez further argued that the automobile exception "cannot be invoked to justify the initial tracking device installation." [*Id.* at 4]. Mr. Sanchez-Gonzalez finally asserts that the inevitable discovery doctrine is not applicable because law enforcement would not have known his whereabouts or identity without the tracking device. [*Id.* at 9-10.]

The government argued in its supplemental brief that Mr. Sanchez-Gonzalez does not have standing under *Jones* because he was not the owner of the vehicle, and there is no evidence in the record that he had permanent or exclusive control over the vehicle. [Gov't Suppl. Br. 4; Dkt. No. 60.] Additionally, the government argued that the automobile exception is "unchanged by the trespass theory" in *Jones*. [*Id.* at 8.] The Court held a hearing on July 11, 2023. [Dkt. No. 61.] Neither side offered additional evidence, but both presented oral argument.

## II.   DISCUSSION

### A. Probable Cause

Mr. Sanchez-Gonzalez objects to the R&R's conclusion that probable cause supported his arrest. Here, almost all of the facts supporting probable cause at the time of the arrest were known to the officers several days before, as they are the same facts known at the time of the tracker placement and subsequent tracking warrant application. The Court readily finds probable cause to support both Mr. Sanchez-Gonzalez's arrest and the tracking of the Malibu.

For a warrantless arrest to be permissible under the Fourth Amendment, it must be "supported by probable cause," which is sufficient information that would lead a "reasonable person to believe that the defendant has committed or is committing an offense." *United States*

*v. Finley*, 56 F.4th 1159, 1165 (8th Cir. 2023) (quotations omitted). Although the standard is "fluid," it requires "a reasonable ground for belief of guilt" that is "particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 370–71 (2003) (quotations omitted). This Court reviews for probable cause "using a common sense approach, not a hypertechnical one." *Lopez-Zuniga*, 909 F.3d at 909 (citation omitted). Probable cause to arrest depends on the totality of the circumstances, *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999), and is based on "the objective facts available to the officers at the time of the arrest," *Smithson v. Aldrich*, 235 F.3d 1058, 1064 (8th Cir. 2000).

The analytical framework for considering probable cause to track a vehicle or a suspect is quite similar. Officers must have probable cause to track a vehicle's location. The Eighth Circuit has held placing a GPS device on a vehicle is a Fourth Amendment search "requiring probable cause and a warrant." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (citing *Jones*, 565 U.S. at 404). Probable cause for tracking exists "when, considering all the circumstances, there is a fair probability that evidence of a crime will be found in a particular place." *Lopez-Zuniga*, 909 F.3d at 909. In the context of tracking the location of a vehicle, officers must show that the location of the vehicle or its movements over time will point to evidence of a crime. "[T]he government must show there is a nexus between the [thing to be tracked], the suspect, and the information sought." *United States v. Powell*, 943 F. Supp. 2d 759, 778 (E.D. Mich. 2013), *aff'd*, 847 F.3d 760 (6th Cir. 2017); *see also United States v. Hoey*, 560 F. Supp. 3d 438, 448 (D. Mass. 2021) (requiring a "concrete nexus" between the vehicle and the crime); *United States v. Petitfrere*, No. 5:22-037-DCR, 2022 WL 2134590, at *5 (E.D. Ky. June 14, 2022) (denying motion to suppress where warrant was supported by probable cause

7

because officers had reason to believe "tracking the vehicle's movements would uncover evidence of crime").

The record establishes that at the time of Mr. Sanchez-Gonzalez's arrest, officers had probable cause to believe he was involved in drug trafficking. Very shortly after the controlled drug buy, Mr. Sanchez-Gonzalez was seen picking up the man who had just participated in the buy, and the pickup happened at or near the scene of the drug deal. [Tr. 13–15.] Courts have found a suspect's presence at or near an illegal drug transaction to support a probable cause determination. "[W]hen a suspect is present for an illegal drug transaction, this fact will support probable cause that the suspect is engaged in a conspiracy to sell illegal drugs. *United States v. Valencia*, Criminal No. 06-162 (1) (JRT-SRN), 2006 WL 2385154, at *3 (D. Minn. Aug. 17, 2006); *see also United States v. Mendoza*, 421 F.3d 663, 667–68 (8th Cir. 2005) (suspect slowly drove by site of drug transaction); *United States v. Segars*, 31 F.3d 655, 659 (8th Cir. 1994) (suspect arrived when drug courier was expected to arrive). Recently, Judge Brasel found it reasonable to infer "for purposes of establishing probable cause" that a defendant knew about another individual's drug dealing because the defendant drove him to and from a controlled drug sale. *United States v. Rosas-Barrientos*, Case No. 22-CR-174-1 (NEB/ECW), 2023 WL 3580819, at *3 (D. Minn. May 22, 2023). The Court reasoned that a "car passenger will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing" because "drug dealing is an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Id.* (cleaned up) (citing *Maryland v. Pringle*, 540 U.S. 366, 373 (2003)).

Here, Mr. Sanchez-Gonzalez drove to the scene of a controlled drug deal and picked up the man who had sold drugs to undercover officers only minutes earlier. Officers saw the man who just sold them drugs get into the vehicle driven by Mr. Sanchez-Gonzalez and sit in the front passenger seat—not a back seat which might indicate a rideshare where driver and passenger do not know each other. [Tr. 14–15.] But the evidence of criminal activity does not end there. Mr. Sanchez-Gonzalez and the man who sold drugs to the officers then drove to the Mall of America and parked in a ramp, where a third man got into the vehicle, exited a few minutes later with a bag, and placed the bag in a second vehicle. [*Id.* at 17.] This conduct is also consistent with drug dealing, particularly given that the passenger had just sold drugs minutes before. The three men then went into the Mall of America together and ate dinner, and the testifying officer stated that the three men appeared to be acquaintances. [*Id.* at 18, 20.] By the time officers applied for the warrant to use the GPS tracker (the day after the controlled buy), they knew that the third man who entered the Malibu was actually the registered owner of the vehicle, and that Mr. Sanchez-Gonzalez was not the registered owner. [Warrant Appl. at 3, Dkt. No. 41–1.] The fact that Mr. Sanchez-Gonzalez was driving a car registered to someone else, picked up an individual five minutes after that individual completed a controlled drug buy, and then drove himself and that individual to a parking garage, where the registered owner of the car got in and exited shortly thereafter with a bag would lead a reasonable officer to believe that Mr. Sanchez-Gonzalez was aware of the drug trafficking and involved in the enterprise himself. As further support, the officers had been investigating the drug trafficking organization for more than a year and knew that it did not use unwitting individuals. [Tr. at 6, 19–20.]

Based on these observations, law enforcement had probable cause to arrest Mr. Sanchez-Gonzalez at the mall. The fact that officers arrested Mr. Sanchez-Gonzalez on a later date rather than immediately does not undermine the legality of the arrest. The same facts gave the officers reason to believe that the vehicle itself was involved in drug trafficking and not only would likely contain evidence, but that its future location would also be evidence of a crime and would further their investigation into the drug trafficking organization. A few days after attaching the GPS tracker at the mall, and after getting a warrant to use the tracker, officers located the vehicle at a hotel and saw Mr. Sanchez-Gonzalez exit the hotel and drive the vehicle. [*Id.* at 48.] Accordingly, the Court agrees with Judge Schultz that law enforcement had probable cause to believe Mr. Sanchez-Gonzalez was involved in drug trafficking and lawfully arrested him on that basis.

## B.  Use and Placement of Tracker

The Court also agrees with the R&R that evidence gained from the GPS tracker— namely, Mr. Sanchez-Gonzalez's location on the day of his arrest—does not require suppression, though the undersigned follows a slightly different path to that conclusion.[2]

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." A vehicle is an "effect" as that term is used in the Fourth Amendment. *Jones*, 565

---

[2]   The Court shares Mr. Sanchez-Gonzalez's concerns about applying the independent source doctrine. In this judge's view, the warrant cannot act as a truly independent source for the information gained through the GPS tracker because the officers did not show that they would have been able to find either the Malibu or Mr. Sanchez-Gonzalez without the unauthorized attachment of the GPS tracker. Although the contents of the warrant were untainted by the previous attachment, the source of information obtained about his subsequent location was not.

10

U.S. at 404. In *Jones*, the Supreme Court addressed whether law enforcement's placement and use of a GPS tracker on the vehicle owned by the defendant's wife constituted a search. The Court held that the government's "installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" *Id.*

In this case, the placement of the tracker was done without a warrant, but its use was expressly permitted by a warrant, so each step must be analyzed separately. The Court concludes that the use of the tracker was lawful due to the warrant. And although the warrantless attachment of the device to the vehicle presents a tricker question, the Court finds that suppression is not warranted.

### Use of the Tracker

The Court first concludes that the officers' *use* of the tracker was lawful in light of the valid warrant they obtained to authorize its use. "A reviewing court is to give the issuing judge's probable-cause determination great deference, confirming only that the judge 'had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *United States v. Edwards*, Case No. 21-CR-255-1 (NEB/ECW), 2022 WL 3536135, at *1 (D. Minn. Aug. 18, 2022) (quoting *Faulkner*, 826 F.3d at 1144). Courts consider the totality of the circumstances to determine whether the affidavit supporting a warrant is sufficient to establish probable cause. *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009). "[A] warrant is proper so long as the evidence as a whole creates a reasonable probability that the search will lead to the discovery of evidence." *United States v. Humphrey*, 140 F.3d 762, 764 (8th Cir. 1998).

The Court has already detailed the facts that support probable cause in this case, and these facts were properly before the judge who issued the warrant. The warrant that permitted

officers to track the Malibu was valid, and their reliance on it to find Mr. Sanchez-Gonzalez at the time of his arrest was appropriate.

### Attachment of the Tracker

The Court turns next to the somewhat more complex question of whether the attachment of the tracker without a warrant requires suppression. The Court concludes that it does not because Mr. Sanchez-Gonzalez lacks standing to challenge the tracker's placement.

Fourth Amendment standing captures "the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *United States v. Bettis*, 946 F.3d 1024, 1027 (8th Cir. 2020) (quoting *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018)). Mr. Sanchez-Gonzalez bears the burden of demonstrating standing to challenge a search or seek suppression of the search's fruits. *See United States v. Muhammed*, 58 F.3d 353, 355 (8th Cir. 1995).

The Supreme Court has articulated two tests to determine whether a person has standing to bring a Fourth Amendment challenge. *Byrd*, 138 S. Ct. at 1526; *see also United States v. Mathias*, 721 F.3d 952, 956–57 (8th Cir. 2013) (applying both tests). The best known test comes from Justice Harlan's concurrence in *Katz v. United States*, 389 U.S. 347 (1967), and it turns on whether the individual had a reasonable expectation of privacy in the place of the alleged Fourth Amendment violation. The second test was articulated in *Jones*, and it is based on common-law trespass and requires an individual to have a property-based interest in the location or item at issue. 565 U.S. at 404–06. In *Jones*, the Court asserted that "the *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test." 565 U.S. at 409 (emphasis in original). Under either framework, an individual

must have standing to challenge a search under the Fourth Amendment, but because the interests at issue differ under the two lines of cases—privacy under *Katz* and property under *Jones*—the nature of the required standing differs as well.

Under *Katz*, it is generally agreed that the driver of a car has a reasonable expectation of privacy in its contents, particularly when the driver has the owner's "permission or consent" to drive it. *Bettis*, 946 F.3d at 1027–29 (quotation omitted).

But standing under *Jones*'s trespass-based theory to Fourth Amendment violations is different. To bring a trespass-based claim under *Jones*, as Mr. Sanchez-Gonzalez does here, a defendant must show that he has a property-based interest in the vehicle. What it means to have a property-based interest in the vehicle is somewhat open to interpretation. Justice Scalia did not have much occasion to examine standing in *Jones*. In a footnote, he explained that the government did not challenge Mr. Jones's standing and conceded that Mr. Jones was the "exclusive driver" of the vehicle even though it was registered to his wife. 565 U.S. at 404 n.2. Since *Jones*, courts have come up with different formulations of what it means for a defendant to have a sufficient property interest in a vehicle to be able to challenge the GPS tracking of its movements.[3]

Courts have coalesced around a few principles. If the defendant is the registered owner of the vehicle, the standing inquiry answers itself. *See, e.g.*, *United States v. Houseal*, No. 3:11CR-143-H, 2014 WL 626765, at *10, 19 (W.D. Ky. Feb. 18, 2014) (in case involving drug

---

[3] The development of the caselaw in this area has been somewhat stifled by the Supreme Court's decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), which held that a warrant is required to obtain historical cell phone location data. Although the outer reaches of that decision are still being determined, it has greatly increased law enforcement's use of warrants before obtaining geolocation data, including from the placement of trackers on cars.

13

trafficking organization that used multiple vehicles, only the owner of each vehicle had standing to challenge the use of GPS tracking devices). And individuals who are mere passengers do not have standing under *Jones* to challenge GPS tracking of the vehicle. *United States v. Cabrera*, 651 F. App'x 118, 122 (3d Cir. 2016); *State v. Fratz*, No. 1538, 2023 WL 2944950, at *11 (Md. Ct. Spec. App. Apr. 14, 2023). Nor do drivers have standing to challenge the tracking when the car's owner consented to the GPS tracker being attached. *United States v. Dewilfond*, 54 F.4th 578, 580–81 (8th Cir. 2022) (owner consented to installing the tracker before defendant borrowed the car); *United States v. Monreal-Rodriguez*, No. CR-18-02215-TUC-JAS (JR), 2021 WL 6932195, at *4 (D. Ariz. Sept. 10, 2021) (device was attached to defendant's work vehicle with employer's consent), *report and recommendation accepted*, 2022 WL 130969 (D. Ariz. Jan. 14, 2022).

Judge Schiltz in this district has suggested that to have standing to bring a trespass-based claim under *Jones*, a defendant "must be able to maintain an action for trespass," which means that a defendant "must have had some type of legally protected property interest in the [vehicle] at the time that the GPS device was installed." *United States v. Barraza-Maldonado*, 879 F. Supp. 2d 1022, 1026–27 (D. Minn. 2012), *aff'd*, 732 F.3d 865 (8th Cir. 2013). But some courts have rejected such a narrow interpretation. *See United States v. Lopez*, 895 F. Supp. 2d 592, 600 (D. Del. 2012) (explaining that *Jones* allows a non-owner to challenge GPS tracking of a vehicle where they were the "exclusive driver" or were "occupying the vehicle at the time" the government attached the device); *United States v. Sconiers*, Case No. 1:21-CR-00267 JLT, 2023 WL 425818, at *3–4 (E.D. Cal. Jan. 26, 2023) (rejecting strict "bailee" approach and finding defendant to have standing where he was known to drive the car and it was parked at

14

an address associated with him). While *Barraza-Maldonado*'s emphasis on whether a person could maintain an action for trespass is perhaps too restrictive, its reasoning properly emphasizes the importance of the property-based right in the standing analysis under *Jones* and the need for some sort of exclusivity.

The Court finds on this record that Mr. Sanchez-Gonzalez lacks standing under *Jones* to bring a trespass-based Fourth Amendment challenge. Mr. Sanchez-Gonzalez is unable to establish that he has the requisite property-right interest in the Malibu. He is not an owner, lessee, possessor, or bailee of the vehicle. Nor did Mr. Sanchez-Gonzalez establish that he was the "exclusive driver" of the car. To be sure, on one occasion the officers observed Mr. Sanchez-Gonzalez driving the Chevy Malibu and saw the registered owner of the car both visit the car and leave in a different vehicle, implicitly allowing Mr. Sanchez-Gonzalez to drive the car. [Tr. 14-15]. On the second occasion, the officer saw Mr. Sanchez-Gonzalez driving the car by himself, leaving the hotel. [Tr. 24]. But at most, these incidents show that he was an "occasional user[]" of someone else's car. *Houseal*, 2014 WL 626765, at *11. While this may give him standing as a driver to challenge a search of the car under the reasonable expectation of privacy theory, Mr. Sanchez-Gonzalez is not invoking the *Katz* line of authority as a basis for challenging the attachment of the tracker. And the subsequent *use* of the tracker is not at issue in the standing discussion because it was covered by a valid warrant.

Mr. Sanchez-Gonzalez simply does not have a property interest in the vehicle beyond that of a permissive user. Without any property interest as articulated in *Jones*, Mr. Sanchez-Gonzalez does not have standing to contest the illegality of the placement of the tracker or

seek suppression of evidence obtained from the subsequent use of that tracker as fruit of the poisonous tree.

### III.   ORDER

Accordingly, **IT IS HEREBY ORDERED:**

1. The Report and Recommendation [Dkt. No. 50] is **ACCEPTED** in part.

2. Defendant's Objection [Dkt. No. 53] is **OVERRULED**.

3. Defendant's Motion to Suppress [Dkt. No. 22] is **DENIED**.

Date: August 15, 2023                                                       *s/ Katherine M. Menendez*
                                                                                    Katherine M. Menendez
                                                                                    United States District Judge